Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3437 | DATE | 9/27/2000 |
| CASE TITLE | Willis vs. Apfel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's and Defendant's Cross-Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion and order, the Court DENIES the Commissioner's motion for summary judgment [#10] in its entirety, GRANTS Willis' motion for summary judgment [#8] and REMANDS the case for proceedings consistent with this opinion. Other pending motions, if any, are denied as moot and the case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | 4 number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | SEP 27 2000 date docketed | 17 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials: mrl | 9-27-00 date mailed notice | |
| | | 00 SEP 27 PM 1:25 Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Johnnie E. Willis ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 99 C 3437 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| Kenneth Apfel, Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Johnnie Willis is currently 41 years old. He has completed high school and four years of college. His work history is somewhat sporadic. He has a history of problems with his knees for which he has claimed a disability and sought social security benefits. He has appealed the denial of his request for benefits to this court. Both Willis and the Commissioner have moved for summary judgment. For the reasons stated below, the Court DENIES the Commissioner's motion, GRANTS Willis' motion and REMANDS the case for proceedings consistent with this opinion.

### Background

After a December 31, 1995, auto accident, in which Willis bumped his knees into the dashboard, Willis went to West Suburban Hospital. Prior to the accident, Willis had had his left knee "scoped" (i.e., had arthroscopic knee surgery). When he went to West Suburban, he reported his knee pain to the doctors, but also stated that the accident caused a different kind of pain.

Since the accident, Willis has had both his left and right knees scoped to diagnose and attempt to repair tears in parts of his knees. Willis has also undergone extensive physical therapy. Because Willis' knees cause him a great deal of pain, he also takes several different types of pain medicine, some of which cause drowsiness.

On August 29, 1996, Dr. Edward Ference evaluated Willis' residual functional capacity ("RFC"). Dr. Ference, who was not Willis' treating physician, concluded that Willis was capable of medium work.[1] About a month later, Dr. J. Michael Morgenstern, a specialist in orthopedic surgery who had seen Willis before and continued to see Willis after this evaluation, concluded that as a result of Willis' knee problems and associated pain, that he would only be able to sedentary work.[2] On March 6, 1997,[3] Dr. Morgenstern again evaluated Willis' RFC. In this report, Dr. Morgenstern found that Willis' condition had worsened and now concluded that Willis could only occasionally lift five pounds and carry it a distance of five feet, that he could not bend, push, or pull, that he could not stand for six hours in an eight-hour-work day, that he could sit for six hours in an eight-hour-work day, but that he would need to stand and lie down intermittently.

In April 1996, Willis applied for Social Security disability benefits. Initially and on reconsideration, Willis' claim was denied. On March 5, 1997, with the assistance of his attorney, Willis presented evidence in support of his claim to an administrative law judge. The ALJ also rejected his appeal in a September 9, 1997, written opinion. One year and one week later, the appeals council denied his request for review.

---

[1] The guidelines define medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can someone can do medium work, we determine that he . . . can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[2] The regulations define sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F. R. § 404.1567(a).

[3] Dr. Morgenstern evaluated Willis one day after the hearing before the ALJ. Because the ALJ's opinion does not mention this RFC analysis, see discussion infra at 4-5, it is impossible to tell whether the ALJ saw it and disregarded it, or did not see it.

In the period between receiving the ALJ's decision and the appeals council's decision, Willis again had his knees scoped. He also consulted with a chiropractor. Evidence of the chiropractor visit and his knee surgeries was presented to the appeals council but was rejected as immaterial. Willis appealed to this court.

### Standard of Reviewing the Commissioner's Final Decision

Judicial review of the Commissioner's final decision is limited. This Court determines whether substantial evidence in the record as a whole supports the decision to deny benefits. See Pope, 998 F.2d at 480; See Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993). "Substantial evidence," in this context means evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court does not "reevaluate the facts, reweigh the evidence, or substitute its own judgment." Luna v. Shalala, 22 F.3d 687, 680 (7th Cir.1994) (citation omitted). The Court will affirm the Commissioner's decision if it is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimant's position. See 42 U.S.C. §§ 405(g), 1383(c)(3). Nevertheless, in making his decision, the ALJ must articulate some minimal basis for the conclusions that he reaches so that the reviewing court may "trace the path" of the ALJ's reasoning. See Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995). And, although the ALJ may credit certain evidence and discredit other evidence, he may not simply ignore evidence favorable to the claimant in articulating the basis for his decision. See Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998).

### The Statutory and Regulatory Framework

To establish a disability under the Social Security Act, plaintiffs must satisfy two conditions. First they must have a physical or mental impairment that is expected to be fatal or that has lasted for a continuous period of at least twelve months. Second, they must show that the impairment or

impairments prevent them from engaging in substantial, gainful, employment. See 42 U.S.C. § 1382c(a)(3). It is the claimants' burden to show a disability. See, e.g., Steward v. Bowen, 858 F.2d 1295, 1297 n.2 (7th Cir. 1988).

The Social Security regulations require the fact finder to follow a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. S 404.1520. The sequential five-step inquiry requires the Commissioner to determine whether a claimant: (1) is not doing substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals one listed by the Commissioner; (4) can perform her past work; and, (5) is capable of performing any work in the national economy. See id. A claimant who does not have a listed impairment (step three) but cannot perform his past work (step four), shifts the burden of showing that he can perform some other job (the fifth step) to the government. Pope v. Shalala, 998 F.2d 473, 477-78 (7th Cir.1993) (citing Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir.1992)). At the fifth step, the claimant's physical and mental impairments, age, education, and work experience are all relevant. See Paige v. Bowen, 695 F.Supp. 975, 977-78 (N.D.Ill.1988). The ALJ can use the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404 Subpart P, Appendix 2, also known as "the Grid," to determine the claimant's capability of performing some other job. See, e.g., Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir.1988).

### Review of the Commissioner's Final Decision

The ALJ found that Willis was not doing substantial gainful activity. Additionally, Willis's knee problems qualified as a severe impairment, but that impairment did not meet or equal one listed by the Commissioner in the regulations. The ALJ also found that Willis could not perform his past work because it required heavy lifting. Willis does not challenge any of these aspects of the ALJ's findings. Willis also does not challenge the ALJ's use of the Grid to determine his ability of

performing some other job. On appeal to this Court, the only aspect of the ALJ's findings that Willis challenges is his residual functional capacity finding.

The ALJ found that Willis was capable of performing "medium work." Although there is evidence in the record to support this conclusion (R. 275), the ALJ neither refers to the supporting evidence as the basis for his conclusion, nor discusses the more recent medical-opinion evidence that undermines his conclusion. (R. 446-48) Although, a March 6, 1997, report opines that Willis' condition had worsened since Dr. Morgenstern last examined him. (R. 446), the ALJ ignored both the conclusions of this report and the objective evidence that supported it.[4] Instead, he focused on a hospital report from a month earlier, which stated that Willis' knee pain had "no identifiable [cause]" (R. 17). This reasoning does not satisfy the standard articulated in Groves, 148 F.3d at 811. Just as in that case, the ALJ could have decided the case either way. Id. "But because his opinion fails to build a bridge from the evidence to the conclusion and is is thus analytically inadequate – in a word, unreasoned – we cannot uphold his decision . . .." Id. Accordingly, the case is remanded to the ALJ for proceedings consistent with this opinion.

---

[4] The ALJ did specifically discredit some aspect of Dr. Morgenstern's opinion, but the opinion in this regard is at best ambiguous. There, the ALJ states that:

> [Dr. Morgenstern] related that he had severe arthritis and might need bilateral total knee replacement . . . [h]ovever, in spite of *these* conclusions, the evidence does not bear up under scrutiny and the undersigned can only assume that [Dr. Morgenstern] make *these assertions* based on what the claimant related to him.

(R. 17) In this context, it is doubtful that the ALJ was referring to Dr. Morgenstern's RFC opinion. Instead, it appears that the ALJ discounted the statements regarding arthritis and the need for knee-replacement surgery. At any rate, the ambiguity underscores the need for the ALJ to more carefully articulate the evidentiary basis for his conclusions.

## Sentence Six Remand

An additional basis for remand is the new evidence of Willis' knee operations. Pursuant to "Sentence Six," a court may remand the case upon "showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (sixth sentence); Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997). To be material, a claimant does not need to show that it is "more likely than not" that the ALJ's outcome would have been different. Cf. United States v. Bhutani, 175 F.3d 572, 576 (7th Cir. 1999) (using the same standard for "materiality" in the context of exculpatory disclosures under Brady v. Maryland, 373 U.S. 83 (1963), to criminal defendants). A Sentence Six remand only requires the claimant to show that there is a reasonable possibility[5] that the ALJ would have reached a different conclusion had the evidence been considered. See Sears v. Bowen, 840 F.2d 394, 399-400 (7th Cir. 1988).

Willis submitted evidence from a chiropractor he had visited and evidence regarding knee surgeries performed in June and July 1998. The chiropractor's report is generally consistent with other evidence indicating that Willis' knees caused him pain. If this were the only evidence submitted, it is highly unlikely that this alone would sway the ALJ. The evidence of the knee surgeries, however, provides a reasonable possibility that the ALJ would reach a different outcome.

As near as the ALJ's analysis can be followed, he discredited much of Willis' subjective evaluations of pain and apparently also discredited Dr. Morgenstern's residual functional capacity

---

[5] The cases upon which the government relies articulate the materiality standard as being a "reasonable probability" as opposed to a "reasonable possibility" standard. See Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993) (citations omitted). The distinction between a "possibility" and a "probability," in this context, however, is without a difference. Although in common usage the word "probability" implies a likelihood of occurrence of more than 50%, the context of these phrases is the statute's "materiality" requirement. See 42 U.S.C. 405(g). In this context, the two words are virtually synonymous. See Bhutani, 175 F.3d at 576.

evaluation based on a lack of objective evidence. As noted above, the ALJ concluded at one point that in February 1997 that there was "no identifiable [cause] for the claimant's bilateral knee pain." (R. 17). The post-operative report indicates, however, that:

> [d]iagnositic arthroscopy revealed an incisional tear of the medial meniscus which was removed .... A large suprapatellar plicum was found and noted to be eroding the femoral condyle. ...The remainder of the joint looked fair to good."

(R. 469) Two aspects of this analysis are material. First, this evidence appears to provide objective support for the knee pain that Willis expressed. There are identifiable problems that the doctors attempted to alleviate by the knee surgery. Second, the fact that Willis voluntarily underwent knee surgery adds credence to his complaints of pain. Although in the context of "cosmetic surgery" it is not odd for someone to undergo an invasive procedure in the absence of any pain, it is still contrary to common sense prevailing outside of that limited and unique context that someone would undergo surgery without a good reason – like the hopeful alleviation of pain. Evidence of Willis' knee surgeries might have caused the ALJ to reach a different conclusion. This reasonable possibility is sufficient under Sentence Six. Accordingly, the case is remanded to the ALJ for proceedings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Commissioner's motion, GRANTS Willis' motion and REMANDS the case for proceedings consistent with this opinion.

Enter:

[signature]

David H. Coar
United States District Judge

Dated: September 27, 2000

-7-